FEE et al. v. DURHAM.

(Circuit Court of Appeals, Eighth Circuit.    March 9, 1903.)

No. 1,617.

1. MINING CLAIMS—RIGHT OF RELOCATION—FAILURE TO COMPLETE ASSESSMENT WORK.

Rev. St. § 2324, as amended by Act Jan. 22, 1880, 21 Stat. c. 9, p. 61 [U. S. Comp. St. 1901, p. 1426], requires $100 worth of labor to be performed on each mining claim in each calendar year, commencing on the 1st of January succeeding the date of location, and provides that "upon a failure to comply with these conditions the claim or mine on which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made, provided that the original locators * * * have not resumed work upon the claim after failure and before such location." A locator commenced his annual assessment work on December 26th, and his employés worked until the night of December 30th, which was Saturday, when they quit until Monday morning, January 1st, and then resumed work, in the meantime leaving their tools on the claim. They continued the work until $500 worth had been done, but less than $100 worth had been done on Saturday night. Sunday night, between 12 and 1 o'clock, plaintiffs went upon the claim and relocated the same. *Held* that, in contemplation of law, the original locator continued in actual possession from Saturday night until Monday morning, and his work was continuous, and that plaintiffs were trespassers, and acquired no rights by their relocation.

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

The High Peak placer mining claim was duly located January 1, 1898, by the grantors of the defendant in error. On the 26th of December, 1899, the original locators of the claim commenced to do the assessment work for that year. Laborers, provided with suitable tools for the purpose, worked continuously during the usual working hours of each day from the 26th of December up to Saturday evening, December 30th, when they left off work, leaving their tools on the ground intending to resume work Monday morning, which they did, and thereafter prosecuted it diligently until largely more than the assessment work required by law had been done. Acting on the assumption that the original location of the claim was forfeited, and that it was open to relocation, because the full amount of the assessment work for the year 1899 had not been done before the expiration of the year, the plaintiffs in error, a few minutes past midnight on the last day of December, 1899, entered upon and relocated the claim, and afterwards brought this action of ejectment to recover possession thereof from the defendant in error. A jury trial resulted in a verdict and judgment for the defendant, and the plaintiffs sued out this writ of error.

The only question in the case which it is material to consider arises on the court's charge to the jury, which was as follows: "In determining this

---

¶ 1. See Mines and Minerals, vol. 34, Cent. Dig. § 59.

case you will start out with the assumption that the defendant's location on the first day of January, 1898, was valid. That gave him until midnight of the thirty-first day of December, 1899, to do such work as was necessary to hold the claim; and it is undisputed in this case that the defendant did not do the work during the year 1899 necessary to hold the claim; therefore at midnight on the 31st day of December, 1899, his claim forfeited, and the land became subject to relocation and entry, unless it appears from the proof that the plaintiffs relocated the land before the defendant resumed work upon the claim after his failure and before such relocation; but if you find from the evidence that the defendant commenced work on the 26th day of December, 1899, and prosecuted said work until the 30th day of December, that day being Saturday, and that on that day his laborers engaged in such work left their tools upon the ground at the place where they were engaged in work, intending to return on Monday morning, January 1, 1900, and that they did return at the usual hour on that day, and continued said work with reasonable diligence until the amount required by law had been performed, and that all of said work was done by defendant in good faith, intending thereby to perfect his title to the land, and that plaintiffs or any of them had knowledge that the defendant was thus engaged in such work on said land, and in order to defeat his claim entered upon said land between the hours of twelve o'clock at midnight and one o'clock on the morning of January 1st, and posted notice on said land, then the plaintiffs were trespassers upon the land in the possession of defendant, and such attempted location, under such circumstances, was void, and they acquired no right thereunder as against the defendant; but, on the other hand, if the defendant did not resume work on said land until the 4th day of January, 1900, and in the meantime the plaintiffs had filed for record the location of said lands, then the plaintiffs would be entitled to recover." The giving of this instruction, to which due exception was taken, is now assigned for error.

The act of Congress requires that $100 worth of labor shall be performed or improvements made on every located mining claim during each year until the patent issues, and the act of Congress approved January 22, 1880, 21 Stat. c. 9, p. 61 [U. S. Comp. St. 1901, p. 1426], provides that "the work required to be done annually on all unpatented mineral claims shall commence on the first day of January succeeding the date of location of such claim."

J. W. Black, S. W. Massey, J. C. Floyd, and Robert Neill, for plaintiffs in error.

S. W. Woods and John B. Jones, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The defendant's grantors were in the actual possession of the claim, actively engaged in doing the annual assessment work thereon, when the plaintiffs entered upon the claim and made their location. The entry and location, under these circumstances, was a trespass, and no rights were acquired thereby. The Lebanon Mining Co. of New York v. The Consolidated Republican Mining Co., 6 Colo. 371; Weese v. Barker, 7 Colo. 178, 2 Pac. 919; Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735. Inchoate rights to the public lands cannot in any case be acquired by trespass or by violence. An entry upon the prior possession of another is a trespass, and tends to provoke violence, homicides, and other crimes, and one making such an entry gains nothing by it. Atherton v. Fowler, 96 U. S. 513, 24 L. Ed. 732.

The original locators must be held to have been in the actual possession of the claim at the time the plaintiffs made their location. The suspension of work Saturday night, intending to resume it Monday morning, and leaving their tools on the ground for that purpose, was not, in any sense, an abandonment of their possession for the time between Saturday night and Monday morning. In contemplation of law, their possession was as complete and actual during that time as if they had remained at work during the night and on the Lord's Day. They were not required to work during the night or on the Lord's Day in order to maintain their possession and make their assessment work continuous. Their possession was attested and protected by their work and the presence of their tools. They could not lawfully work on the Lord's Day if they had desired to do so, for the law of the state forbids labor on that day under a penalty. Sand. & H. Dig. § 1887. Resting from their work from Saturday night until Monday morning was no more an abandonment of their work or possession than the cessation of work to eat their midday meal would be.

Under the act of Congress the failure to do the required assessment work within the year does not absolutely and irrevocably render the claim subject to relocation. It has this qualification: "Provided that the original locators * * * have not resumed work after failure and before such location." Referring to this statute the Supreme Court of the United States in Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735, said:

"Such being the law, it seems to us clear that if work is renewed on a claim after it has once been open to relocation, but before a relocation is actually made, the rights of the original owners stand as they would if there had been no failure to comply with this condition of the act. * * * Mining claims are not open to relocation until the rights of the former locator have come to an end. A relocator seeks to avail himself of mineral in the public lands which another has discovered. This he cannot do until the discoverer has in law abandoned his claim and left the property open for another to take up."

The original locators in this case had not abandoned their claim, but were actually and continuously at work from the 26th of December until an early day in January, when they had done $500 worth of work. There was no suspension of the work during this time, and there was no period of time during which the plaintiffs could enter and make a valid location. The continuity of the work and possession was not broken by the cessation of labor at night and on the Lord's Day. It must be conceded that if the original locators had "resumed work" after the clock struck 12 on Saturday night, December 31st, that the plaintiffs' location would have been invalid. We think upon the facts in this case, for all legal purposes, the original locators must be held to have been prosecuting the work for the whole of that night, and that the plaintiffs could not rightfully enter upon the claim and make a valid location between midnight and the usual hour of resuming work on Monday morning. Pharis v. Muldoon (Cal.) 17 Pac. 70; Belcher Consolidated Gold Mining Co. v. Deferrari, 62 Cal. 160.

The instructions of the court are in harmony with the views we have expressed. The judgment of the Circuit Court is affirmed.

SANBORN, Circuit Judge (dissenting). The portion of the act of Congress which conditions the decision of this case reads:

"On each claim located after the tenth day of May, eighteen hundred and seventy-two, and until a patent has been issued therefor, not less than one hundred dollars' worth of labor shall be performed or improvements made during each year. * * * And upon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made, provided that the original locators, their heirs, assigns, or legal representatives, have not resumed work upon the claim after failure and before such location." U. S. Comp. St. 1901, § 2324.

The practical effect of the opinion of the majority of the court is to amend the portion of this statute preceding the stars, which is quoted above, so that it shall read:

"On each claim located after the tenth day of May, 1872, and until a patent has been issued therefor, not less than one hundred dollars' worth of labor shall be performed or improvements made during each year, or the locator shall during the year commence to do this work or make these improvements, shall leave some idle tools upon the ground, and shall during the year form an intention to complete the work or improvements after the expiration of the year, and shall subsequently effectuate that intention."

This change of the statute by judicial interpretation seems to me to be unwarranted, because it has the effect to annul the condition precedent prescribed by the act of Congress for the validity of a mining claim, that not less than $100 worth of labor shall be performed during the year, and to substitute for it a requirement of an indefinite and an infinitesimal amount of labor in the teeth of the rule that statutes should be so construed as to effectuate rather than to destroy the enactments they contain (Potter's Dwarris on Statutes and Constitutions, p. 128, § 16), because the language of the statute is plain and its meaning is clear, so that it is not fairly open to a construction which so emasculates it (Lake Co. v. Rollins, 130 U. S. 662, 670, 9 Sup. Ct. 651, 32 L. Ed. 1060; U. S. v. Hartwell, 6 Wall. 396, 18 L. Ed. 830; Sturges v. Crowninshield, 4 Wheat. 122, 4 L. Ed. 529; Knox Co. v. Morton, 68 Fed. 787, 789, 15 C. C. A. 671, 673; Railroad Co. v. Sage, 71 Fed. 40, 47, 17 C. C. A. 558, 565); and because this interpretation really makes an exception to the provision of the statute when its terms are plain, and contain no exception, so that the legal presumption is that Congress intended to make none (Shreve v. Cheesman, 69 Fed. 785, 786, 16 C. C. A. 413, 414; Madden v. Lancaster Co., 12 C. C. A. 566, 573, 65 Fed. 188, 195; Morgan v. City of Des Moines, 60 Fed. 208, 8 C. C. A. 569). The opposite construction, the interpretation that the statute means what it expresses, that it means as it reads, that if the $100 worth of work is not performed within the year the locator's right to the mining claim ceases, and that claim becomes subject to relocation at any time before he resumes his work, has been adopted by the Supreme Court in many cases, notably in Jackson v. Roby, 109 U. S. 442, 3 Sup. Ct. 301, 27 L. Ed. 990, where that court says of this section:

"The act of 1872—and its provisions are re-enacted in the Revised Statutes—declares that on each claim subsequently located, until a patent for it is issued, there shall be annually expended for labor or improvements $100, and on claims previously located an annual expenditure of $10 for each one

hundred feet in length along the vein, and provides that when such claims are held in common the expenditure may be upon any one of them. And it declares that upon a failure to comply with these conditions the claim shall be opened for relocation in the same manner as if no location of the same had ever been made, provided the original locators, their assigns or representatives, have not resumed work upon it after failure and before relocation."

Turning now to the facts of this case in the light of the act of Congress and its interpretation by the Supreme Court, we find that in order to sustain the validity of the mining claim of the original locators they were required to perform work of the value of $100 on or before midnight of December 31, 1899; that they performed work of the value of only $15 prior to that time; that they were not at work upon the claim when that day expired; that the statute declared that it then became "open to relocation in the same manner as if no location had ever been made"; that between that time and 1 a. m. of January 1, 1900, the plaintiffs relocated the claim in strict conformity to the provisions of this statute; and that the original locators had not then resumed and did not resume work upon it until 7 o'clock on that morning. These facts seem to me to establish in the plaintiffs a perfect right to this mining claim under the statute which has been quoted.

It is said in the opinion of the majority that this relocation was ineffectual and void because the mining claim was in the possession of the original locators, because its relocation was a trespass, and therefore no rights in favor of the plaintiffs could be founded thereon; and Lebanon Min. Co. v. Consolidated Rep. Min. Co., 6 Colo. 371, Weese v. Barker, 7 Colo. 178, 2 Pac. 919, Atherton v. Fowler, 96 U. S. 513, 24 L. Ed. 732, and Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735, are cited in support of this position. These authorities, with the exception of Belk v. Meagher, which will be subsequently discussed, are not applicable to the question at issue in this case. They go no farther than to establish these two propositions: (1) That a location cannot lawfully be made upon public land in the possession of another who holds it under color of title to a prior and superior inchoate right to it (Lebanon Min. Co. v. Consolidated Rep. Min. Co., 6 Colo. 371, 379; Weese v. Barker, 7 Colo. 178, 2 Pac. 919); and (2) that a right to a mining claim or to any other title cannot be lawfully initiated by a forcible, as distinguished from a peaceable, entry (Atherton v. Fowler, 96 U. S. 513, 24 L. Ed. 732). The case at bar does not fall under either of these propositions. In the first place the original locators had no title or color of title to a superior or to any inchoate right to this claim when the plaintiffs relocated it. They, therefore, had no right which drew to them the lawful possession as against the plaintiffs, and they were not in the actual possession of it. The inchoate right of the original locators had ceased at midnight of December 31, 1899. Their possession, as against qualified locators, had also ceased, because the statute declared that the moment they had failed to do the work within the year the land was open to relocation, notwithstanding their possession, in the same manner as if no location of the same had ever been made. The only right remaining in the original locators was the right to resume be-

fore the plaintiffs relocated the land, and this was a mere floating right, subject to the earlier exercise of the right of the plaintiffs. The plaintiffs first exercised their right, and thereby secured the superior claim. In the second place, the entry of the plaintiffs was peaceable, not forcible, so that it does not fall under the rule in Atherton v. Fowler, which was made for the express purpose of avoiding violence and personal injury in the assertion of conflicting claims.

Nor does the fact that the plaintiffs relocated this claim between 12 o'clock and 1 o'clock at night militate in any way against its validity. Congress in its wisdom provided that the man who first after midnight of December 31st in each year relocated a forfeited claim should have the prior right to it when they enacted that the year within which the work should be done should commence on the 1st day of January succeeding the date of location. U. S. Comp. St. 1901, § 2324. They might have provided that this year should commence at the hour when courts generally open, at 10 o'clock in the forenoon, and then the relocations would have been made between 10 and 11 in the morning. Under the act as Congress saw fit to enact it, the custom and practice of miners has been, is, and naturally will be, to make most of their relocations between 12 and 1 at night (Lindley on Mines, § 652, p. 823), because only in this way can they be sure that the exercise of their rights will precede the exercise of similar rights by others. In this state of the law and the practice of miners it is not perceived that later relocations would be either more righteous or more secure than those made immediately after the expiration of the year fixed by the act of Congress.

It is believed that under the provisions of the act of Congress under consideration the original locators of this claim had no inchoate right to it and no possession of it when the plaintiffs relocated it; that the plaintiffs' peaceable entry for that purpose was not a trespass; that their relocation established in them a perfect right to this mine superior to that of the original locators; and that these propositions are sustained by the act of Congress itself, and by the decisions of the courts, which have considered and decided the questions here presented. U. S. Comp. St. 1901, §§ 2322, 2324; Belk v. Meagher, 104 U. S. 279, 287, 26 L. Ed. 735; Du Prat v. James, 65 Cal. 555, 557, 4 Pac. 562; Russell v. Brosseau, 65 Cal. 605, 608, 609, 4 Pac. 643; Kramer v. Settle, 1 Idaho, 485, 491, 492; Renshaw v. Switzer (Mont.) 13 Pac. 127; Morgan v. Tillottson, 73 Cal. 520, 15 Pac. 88.

Section 2322, U. S. Comp. St. 1901, under which the original locators held this claim, provided that "the locators of all mining locations * * * so long as they comply with the laws of the United States * * * shall have the exclusive right of possession and enjoyment" of their respective claims, and this provision was equivalent to a declaration that they shall not have the right to the possession and enjoyment of the claims when they cease to comply with the laws of the United States. When the plaintiffs made their relocation the original locators had ceased to comply with these laws, they had not performed the work which those laws required them to do during the year 1899 as a condition precedent to the continuance of their right, and they had no right either to the claim or to the possession of it.

Section 2324 makes this conclusion clear, for it provides that upon a failure to perform this work within the year the claim shall be "open to relocation in the same manner as if no location of the same had ever been made," unless the original locators resume work before relocation is made. When the plaintiffs relocated the claim the original locators had completely failed to do the required work of the year 1899, and they had not resumed work upon this claim. They were not in the actual occupation of it. The entry of the plaintiffs upon it was peaceable, necessary to the exercise of the right given them by the statute, and it ·was made for the express purpose of enforcing that right. This entry, this relocation, could not have been a trespass, for a trespass is an unlawful interference with the right of another, and this relocation did not impinge upon any of the rights of the original locators or of any other parties. The only right they had was the right to resume work before the plaintiffs relocated the claim. The right to resume and the right to relocate vested in the respective parties the instant the 31st day of December passed. Congress granted the right to the land to the parties who first exercised their right. The plaintiffs exercised their right to relocate before the original locators exercised their right to resume and they thereby acquired the better right to the property. Their acts of entry and relocation did not constitute a trespass, because they violated none of the rights of the original locators, but simply asserted and exercised a right Congress had expressly granted to them. These views are not without support in repeated decisions of the courts.

In Belk v. Meagher, 104 U. S. 279, 287, 26 L. Ed. 735, Belk had made a location of a mining claim, had performed work upon it, but had failed, like the original locators here, to fully comply with the statutes. No one had entered upon or interfered with his possession, and he was working upon the claim from time to· time. He was at least as completely in possession as were the original locators in the case at bar. Thereupon, the defendants in that case, as the plaintiffs did in this case, peaceably entered upon and relocated the mining claim, and Belk insisted, as do the original locators in this case, that the property was covered by his location and was in his possession, so that the entry of the relocators was a trespass, and could not be the basis of any lawful claim, under the rule in Atherton v. Fowler, 96 U. S. 513, 24 L. Ed. 732. But the Supreme Court said:

"Under the provisions of the Revised Statutes relied on, Belk could not get a patent for the claim he attempted to locate, unless he secured what is here made the equivalent of a valid location by actually holding and working for the requisite time. If he actually held possession and worked the claim long enough, and kept all others out, his right to a patent would be complete. He had no grant of any right of possession. His ultimate right to a patent depended entirely, on his keeping himself in and all others out, and if he was not actually in he was in law out. A peaceable adverse entry, coupled with the right to hold the possession which was thereby acquired, operated as an ·ouster, which broke the continuity of his holding, and deprived him of ·the title he might have got if he had kept in for the requisite length of time. He had made no such location as prevented the lands from being in law vacant. Others had the right to enter for the purpose of taking them up, if it could be done peaceably and without force. There is nothing in Atherton v. Fowler, 96 U. S. 513, 24 L. Ed. 732, to the contrary of this. In that

case it was held a right of pre-emption could not be established by a forcible intrusion upon the possession of one who had already settled upon, improved, and inclosed the property. Upon that proposition the court was unanimous. We also agree that, if a peaceable entry had been made on lands which had not been enclosed or improved, a good right might have been secured. * * * His (Belk's) possession might have been such as would have enabled him to bring an action of trespass against one who entered without any color of right, but it was not ·enough, as we think, to prevent an entry peaceably and in good faith for the purpose of securing a right under the act of Congress to the exclusive possession and enjoyment of the property. The defendants, having got into possession and perfected a relocation, have secured the better right."

In Du Prat v. James, 65 Cal. 555, 556, 557, 4 Pac. 562, the plaintiffs had located a mining claim, had performed the necessary work for the years 1876, 1877, 1878, and 1879, and had done work of the value of $9 in the year 1880. Thereupon, on January 1, 1881, the defendants entered upon the possession of the plaintiffs, and relocated the claim, and the latter insisted that their relocation was a trespass and ineffectual. The Supreme Court of California said:

"It has been held by the Supreme Court of the United States, and by this court, that a person cannot enter upon the actual possession of another for the purpose of laying foundation for a pre-emption claim to public lands of the United States; and it is claimed by the appellant that the same principle operated upon the parties to this controversy, and the defendants could not lawfully enter upon the possession of the plaintiff and make a valid location, nor acquire any rights as against the plaintiff; that the defendants could not, by a trespass, lay a foundation for obtaining the benefit of the act of Congress for the location of mining claims. The cases of Eilers v. Boatman, 3 Utah, 159, 2 Pac. 66, and Weese v. Barker, 7 Colo. 178, 2 Pac. 919, are cited to support this view; but we think a close examination of the act of Congress (Rev. St. §§ 2322, 2324) shows the reverse to be the better view. After declaring in section 2322 that the locators of all mining locations, so long as they comply with the laws of the United States, and with the state, territorial, and local regulations, not in conflict therewith, shall have the exclusive right of possession and enjoyment of all the surface included· within the lines of their locations, and of all veins, etc.; and, after declaring in section 2324 that a certain amount of labor shall be performed in each year, it is provided in section 2324 that 'upon a failure to comply with these conditions the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made.' It seems from the foregoing that plaintiffs' only right to the possession depended upon the performance, annually, of the specified labor, and, the labor being unperformed, the ground was open to relocation. The act of Congress does not say the ground shall be open to relocation if the labor be unperformed 'and' if it be unoccupied; on the contrary, as above said, it is open to relocation if the labor be unperformed. It is urged that the clause of section 2324, giving to the original locator the right to perform the labor after the failure and before the relocation, gave him the right (as against the relocator) to remain in possession and exclude all others. The logical result of that proposition would be to annul the requirement for the performance of the labor; for, if he may remain and prevent relocation for one day, he may for a year—he may for an indefinite period. Congress had the power to impose such conditions on the right to the possession of the public lands as it saw fit, and we think such conditions must be complied with. It will be observed that the entry of the defendant was peaceable and in good faith. The right of the original locator to perform the labor after a failure, and have the benefit of his location, is dependent upon his having performed the labor before the relocation."

To the same effect are Russell v. Brosseau, 65 Cal. 608, 609, 4 Pac. 643; Kramer v. Settle, 1 Idaho, 491, 492; Renshaw v. Switzer

(Mont.) 13 Pac. 127; Morgan v. Tillottson, 73 Cal. 520, 15 Pac. 88. Any other rule, as the Supreme Court of California well says, practically repeals the statute, for if a locator, by depositing idle tools and forming an intention, may hold the possession and the title to a mine against all comers for one hour, he may for two hours, two days, for an indefinite time. No case in which this question has been considered has come under my observation in which there is a decision which either conflicts with or modifies the rule established by these authorities. There is nothing of that character in the cases of Pharis v. Muldoon (Cal.) 17 Pac. 70, and Belcher Consol. G. M. Co. v. Deferrari, 62 Cal. 160, cited in the opinion of the majority. In each of these cases the original locators had resumed work upon the mining claim before the relocation was perfected. In the case at bar there was no resumption or attempted resumption until after the relocation had been made. The act of Congress and the authorities under it seem to me to be clear and conclusive that where the work is not done within the year the right of the locator ceases. Nothing but the required work will preserve it. Neither idle tools lying upon the ground nor good intentions can, in my opinion, be substituted for the work required, because the statute excludes them when it expressly limits the condition precedent to the performance of the work within the year. When the failure to do that work has occurred, nothing but a resumption of the work before a relocation will, in my opinion, sustain the original location. Tools upon the ground, intention to resume, resumption after relocation, are each and all alike ineffectual to re-establish the original location; because the act of Congress expressly excludes them when it declares that resumption of the work before the relocation, and that alone, can re-establish the original location.

For these reasons, in my opinion the judgment below ought to be reversed, and a new trial of this case ought to be granted.