## WILLITT v. BAKER.

(Circuit Court, W. D. Arkansas, Harrison Division. December 10, 1904.)

1. FEDERAL COURTS—EQUITY JURISDICTION—SUIT TO QUIET TITLE.
   Where a state statute authorizes a suit to quiet title regardless of possession, a federal court of equity in such state is a court of competent jurisdiction, in which a suit in support of an adverse claim to mining ground may be maintained under Rev. St. § 2326 [U. S. Comp. St. 1901, p. 1430], when it appears that neither of the parties is in possession.

2. SAME—JURISDICTION—SUIT FOR POSSESSION OF MINING CLAIM.
   A suit brought under Rev. St. § 2326 [U. S. Comp. St. 1901, p. 1430], in support of an adverse claim to mining ground, is not necessarily one of federal cognizance, but the jurisdiction of a federal court is dependent on diversity of citizenship.

3. SAME—DIVERSITY OF CITIZENSHIP.
   Where a sale and conveyance of a mining claim are real, and not merely simulated, the motive of the sale is immaterial, so far as affecting the right of the grantee to maintain a suit for its possession in a federal court on the ground of diversity of citizenship.

4. MINING CLAIMS—SUIT IN SUPPORT OF ADVERSE CLAIM—PARTIES.
   A part owner of a mining claim, who joins with the other owners in filing an adverse claim under Rev. St. § 2326 [U. S. Comp. St. 1901, p. 1430], but afterwards becomes vested by conveyances with title to the interests of the others, may maintain the suit required by said section in support of the adverse claim in his own name.

5. SAME—RIGHT OF RELOCATION—FAILURE TO COMPLETE ASSESSMENT WORK.
   Under Rev. St. § 2324, as amended in 1880 (Act Jan. 22, 1880, c. 9, § 2, 21 Stat. 61 [U. S. Comp. St. 1901, p. 1426]), which makes a mining claim subject to relocation on the failure of the original locators to do the required assessment work in any year, "provided the original locators * * * have not resumed work upon the claim after failure and before such location," where the locators of a claim were at work thereon on the 31st of December, and that night left their tools in the cut, intending to resume work the next morning at the usual time, which they did, their possession and work were, in law, continuous; and one who made a relocation in the night, during their absence, was a trespasser, and acquired no rights by the relocation.

6. SAME—SUIT ON ADVERSE CLAIM—RIGHT OF DEFENDANT TO JUDGMENT.
   In a suit brought under Rev. St. § 2326 [U. S. Comp. St. 1901, p. 1430], by an adverse claimant to determine the right to the possession of a mining claim, the title of each party is brought in question; and, to entitle the defendant to a judgment or decree establishing his title, even where the plaintiff's case fails, he must prove that he did the assessment work for each year as required by the statute.

¶ 3. Diverse citizenship as a ground of federal jurisdiction, see note to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.

In Equity.   Suit in support of adverse claim to mining ground.

S. W. Woods, for plaintiff.
J. C. Floyd, for defendant.

ROGERS, District Judge.   The bill of complaint in this case was filed in this court November 26, 1902, and process issued on that day. Service was had January 1, 1903, and the answer was filed two days later.   Thereafter the rules of practice obtaining in this court were ignored, and all that has been done was done by consent of counsel for the parties.   At the trial all questions of irregularity were expressly waived in open court, and the whole case, as prepared, was argued and submitted on the merits.   I shall treat the case in that way.

The plaintiff alleges that on the 1st day of January, 1901, the west half of the northwest quarter of section 29, township 17 north, range 14 west, situate in the Marion county mining district, county of Marion and state of Arkansas, was a part of the vacant, unappropriated public domain, subject to location and appropriation as a placer mining claim, and on said day William H. Bradley, C. C. Clendenin, Fred B. Sanders, H. Shelden, F. P. Clendenin, Geo. L. Cornell, C. W. Darling, and the plaintiff, R. W. Willitt, all being citizens of the United States, and having made a discovery of mineral on said land, entered thereupon in compliance with the mining laws of the United States, the laws of the state of Arkansas, and the rules and regulations of the Marion county mining district, and located said land as a placer mining claim, by posting a placer mining location thereon, and by filing a true copy of the same for record in the recorder's office of Marion county, Ark., where the same now appears of record, and makes a copy of said notice a part of the complaint, marked "Exhibit A."   By proper allegations in the bill it is made to appear that before it was filed all such rights as were acquired by all of said locators, as hereinbefore stated, became vested in the plaintiff, R. W. Willitt, and copies of the mesne conveyances executed by them to said Willitt are made exhibits to the bill. It is then alleged that, by virtue of said location and mesne conveyances, the plaintiff is the owner and entitled to the possessory right to said land, and that he and those under whom he holds have had the quiet, open, and peaceable possession of said land since the date of said location.   It is then alleged that the defendant, E. C. Baker, made mineral application No. 559 for a United States patent for said land at the land office in Harrison, Ark., and published his notice thereof on the 28th day of August, 1902, and during the 60 days of publication of said notice that R. W. Willitt and his grantors above named filed their adverse claim No. 61 against said mineral application No. 559, and paid the legal fee therefor, and that said application No. 559 was on the 27th day of October, 1902, suspended, and a receiver's receipt issued thereon, a copy of which receipt is attached to, and made a part of, the complaint.

In a second paragraph of the bill the plaintiff alleges that on the 1st day of January, 1901, the west half of the northwest quarter and the east half of the northwest quarter of section 29, township 17 north, range 14 west, was a part of the vacant and unappropriated public

domain, and subject to location and appropriation as a placer mining claim, and on said date William M. Willitt, C. C. Clendenin, Grant C. Stebbins, William H. Bradley, Fred B. Sanders, William Towers, C. W. Darling, and the plaintiff, R. W. Willitt, all being citizens of the United States, having made a discovery of mineral thereon, entered upon said land in compliance with the mining laws of the United States, the laws of the state of Arkansas, and the local rules and regulations of the Marion county mining district, and located said land as a placer mining claim by posting a placer mining location notice thereon, and by filing a true copy of the same in the recorder's office of said Marion county, where it now appears of record, and attaches a copy thereof to the complaint as an exhibit. By appropriate allegation it is made to appear in the bill that, before it was filed, all such rights as the above-named locators acquired in said lands by virtue of the location herein-before stated became vested in the complainant in this suit. It is then alleged that, by virtue of said location and mesne conveyances, the plaintiff is the owner of, and entitled to the possessory right to, said land, and that he, and those under whom he holds, have held the quiet, open, and peaceable possession of said land since the date of said location, and that said last-described lands were also included in a part of said mineral application No. 559 of said defendant, E. C. Baker, and that said plaintiff, R. W. Willitt, and his above-named grantors, at the same time they filed adverse claim No. 61, also filed adverse claim No. 62, also against said mineral application No. 559, and paid the legal fee therefor, and said adverse claim prevailed, and said application was on the said 27th of October, 1902, suspended, and a receiver's receipt issued for said filing fee, a copy of which is attached to the complaint. The bill then alleges that the defendant, Baker, does not hold or own any right, title, or interest in said lands, and that he is not entitled to the United States patent therefor, and states that the location under which the defendant claims title is null and void, and that his application based thereon is fraudulent and constitutes a cloud on plaintiff's title. Plaintiff further states that said lands are wild and unimproved, and are worth the sum of $3,000; that the plaintiff is a citizen of the state of Illinois, and Baker is a citizen of the state of Arkansas—and prays for a decree declaring that he is the owner of said mining claim, and the possessory right thereto; that said location under which defendant claims is null and void; and that said mineral application No. 559 be canceled, and that he have his costs and all further proper relief.

On the 10th of October, 1904, plaintiff, by consent, filed a supplemental complaint, in which he alleges that for the purpose of perfecting his possessory title to the first-described tract of land under his first location, as stated in his original complaint, on the 11th of May, 1904, he caused a location notice, in amendment of the said original location notice, describing his first-named tract of land by blazed boundary lines, and by stakes set for the corners thereof, and further described the land by measurement of the boundary lines, and caused the names of the said original locators to be posted in a conspicuous place on the said land, in the presence of two witnesses, who signed the same as such, and caused a copy of said amended notice to be filed

in the office of the recorder of Marion county on the 7th of May, 1904, where the same is now recorded, all of which is made to appear by reference to a copy of the location notice filed with the amended petition. He further alleges that, for the purpose of perfecting his possessory title to the second tracts of land described in his complaint under his said mining location made on the 1st of January, 1901, on the 12th of May, 1904, he caused a location notice in amendment of the said original location notice, describing the said land by blazed boundary lines, and by stakes set for the corners thereof, and further described the land by measurement of the said boundary lines, and caused the names of the said original locators to be posted in a conspicuous place on the said land in the presence of two witnesses, who signed the same as such, and also caused a copy of the said amended location notice to be filed for record in the office of the recorder of said Marion county on the 17th of May, 1904, where the same now appears of record, all of which will appear more fully by reference to a copy attached to the complaint, and made a part thereof.

On the 5th of January, 1903, the defendant filed his answer, paragraph 1 of which is a special plea to the jurisdiction of the court. It may be remarked, in passing, that the plea is not sworn to, nor does it contain the certificate of counsel, as required by equity rule 31 of the Supreme Court of the United States. In his special plea the defendant alleges that he made mineral application 559 for all of the land described in the complaint, and that on the 27th of October, 1902, R. W. Willitt, William M. Willitt, Grant C. Stebbins, William H. Bradley, Fred B. Sanders, William Towers, C. W. Darling, and C. C. Clendenin filed their adverse claim No. 62 against his said mineral application, and that the said Fred B. Sanders and C. C. Clendenin were at the time of filing said adverse claim, and now are, residents of the state of Arkansas, and that the transfers of said interests in said land under the mining location relied on by the said plaintiff in this controversy, to the plaintiff, were not made for the purpose of parting with their interests in said land under said location, but, as defendant believes and avers, for the purpose of giving the federal court jurisdiction in this case; and the defendant further avers that the said R. W. Willitt now holds the interest transferred by C. C. Clendenin to Fred B. Sanders in trust for them, for their use and benefit, and they are interested in this controversy, and, being residents of this state, for this reason this court is without jurisdiction to try this case, wherefore he prays that the same be tried, and that the cause be dismissed.

In the second paragraph defendant denies that on the 1st of January, 1901, the land described in paragraph 1 of the complaint was a part of the vacant, unappropriated public domain, and subject to location and appropriation as a placer mining claim. He denies that the location of plaintiff and his co-locators, as alleged in the complaint, was filed or that it was made in compliance with the mining laws of the United States, the state of Arkansas, or the rules and regulations of the Marion county mining district, and avers the fact to be that said lands were not at said date a part of the vacant, unappropriated public domain, subject to location and appropriation as a placer mining claim, and that said pretended location, under and by virtue of which plaintiff

claims, was null and void, and that the subsequent conveyances made to plaintiff by his co-locators are likewise null and void. He denies that plaintiff, by virtue of said location and said mesne conveyances, became the owner of said land, or that he has now or ever has had the quiet and peaceable possession of said land, or any right or title to the same. He also denies that on the 1st of January, 1901, the lands described in the second paragraph of plaintiff's complaint were a part of the vacant, unappropriated public domain, subject to location and appropriation as a placer mining claim, and denies that the pretended location made by the plaintiff and his co-locators was filed or that it was made in compliance with the mining laws of the United States, the laws of the state of Arkansas, or the local rules and regulations of the Marion county mining district, but avers the fact to be that said land was not at said time a part of the vacant, unappropriated public domain, subject to location or appropriation as a placer mining claim, and that the said pretended location by plaintiff and his co-locators was null and void, and that the subsequent conveyances were likewise null and void. He denies that plaintiff is, by virtue of said location and mesne conveyances, the owner of said land, and denies that he now has or ever has had the quiet, peaceable possession of said land, or any right or title to the same. By way of further answer, he alleges that on the 2d day of January, 1899, all of said lands were part of the vacant, unappropriated public domain, and subject to location and appropriation as a placer mining claim, and that on that day S. G. Wilson, John Bearden, W. C. Bearden, W. S. Teegarden, N. J. Bearden, M. E. Bearden, O. L. Cox, and D. C. Campbell, all being citizens of the United States, having made a discovery of mineral thereon, entered upon said lands in compliance with the mining laws of the United States, the laws of the state of Arkansas, and the local rules and regulations of the Marion county mining district, and located said land as a placer mining claim by posting a mining location notice thereon, and by filing a true copy of the same for record in the recorder's office of Marion county, Ark., where the same now appears of record, a copy of which is attached to, and made a part of, this answer; that said locators entered upon the actual possession of said lands for mining purposes, and they and their grantee, E. C. Baker, have ever since been in possession of said land, and have performed the amount of labor and work necessary thereon for patent. He further alleges that on and prior to the filing of the complaint, by proper conveyances, the interests of all his co-locators had become vested in him, and filed copies of the deeds with his answer. He also alleges that by virtue of said location and conveyances the defendant is the owner of the possessory right to said lands, and that he and those under whom he holds have performed the assessment work on said land required by law, and have done and performed the amount of work thereon sufficient in law to entitle him to a United States patent upon payment of the purchase price of the land to the government, and he had made application No. 559 so to do, and is entitled to the possession of said land, and is now in the actual possession of the same.

On the 10th of October the defendant filed a supplemental answer to the plaintiff's amended complaint, and therein denies that the allegations

and averments made in said supplemental complaint, in paragraph 1 thereof, are true, as alleged, and further denies that plaintiff is entitled to any relief thereunder. Further answering, he denies that the allegations made in paragraph 2 of said supplemental complaint are true, as alleged, and further denies that plaintiff is entitled to any relief thereunder. On the same day defendant filed another supplemental answer, in which he alleges that, for the purpose of perfecting his possessory title to all of said lands under the mining location made thereon January 1, 1899, by the persons in his original answer named, he on the 12th day of May, 1904, caused the location notice in amendment of said original notice describing said lands or mining claims to be made by blazing the boundary lines, and putting up stakes in the corners thereof, and further described the lands by measurement of the boundary lines, and in the names of the original locators, and caused the same to be posted in a conspicuous place on said land, in the presence of two witnesses, who signed the same as such, and also caused a copy of the same amended notice to be filed in the office of the recorder of Marion county, Ark., on the 12th of May, 1904, where the same appears of record, a copy of which notice is attached to said amended answer. On the same day (October 10th) plaintiff filed his replication to the special plea designated in the first paragraph of defendant's answer, and also a replication to the second paragraph of defendant's answer. On the 11th of October, 1904, a stipulation was filed as follows:

"It is agreed and stipulated in this case that the rules and regulations of the Marion county mining district provide for the recording of mining location notices, and that after the 23d day of October, 1899, said local laws require that the locators, or some one of them, must go upon the ground, in person or by agent, when the notice is posted, and the posting of said notice must be witnessed by two disinterested witnesses upon the ground, who must sign their names as witnesses; that this rule was not in force at the date of January 1, 1899, when the location made by N. J. Bearden et al., under which defendant, E. C. Baker, claims title, was made, but that said rule was first adopted October 23, 1899, but there was a rule in Marion county at that time requiring notices to be recorded."

The first question that arises in this case is one of jurisdiction. Both parties allege that they were in possession of the property at the institution of the suit. In point of fact, neither was in actual possession. The property was wild, unimproved, and unoccupied. If the defendant had been in actual possession at the institution of the suit, the plaintiff had a complete remedy at law by the institution of a suit in ejectment. Where neither party is in actual possession, is a court of equity a court of "competent jurisdiction," within the meaning of section 2326, Rev. St. U. S. [U. S. Comp. St. 1901, p. 1430]? In Wehrman v. Conklin, 155 U. S. 321, 15 Sup. Ct. 131, 39 L. Ed. 167, the court said:

"The general principles of equity jurisprudence, as administered both in this country and in England, permit a bill to quiet title to be filed only by a party in possession against a defendant who has been ineffectually seeking to establish a legal title by repeated actions of ejectment; and, as a prerequisite to such bill, it was necessary that the title of the plaintiff should have been established by at least one successful trial at law."

As said further on in that case:

"The jurisdiction was in fact only another exercise of the familiar power of a court of equity to prevent a multiplicity of suits by bills of peace."

See Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52, in which it is said:

"To entitle the plaintiff to relief in such cases, the concurrence of three particulars was essential: He must have been in possession of the property, he must have been disturbed in its possession by repeated actions at law, and he must have established his right by successive judgments in his favor. Upon these facts appearing, the court would interpose and grant a perpetual injunction to quiet the possession of the plaintiff against any further litigation from the same source. It was only in this way that adequate relief could be afforded against vexatious litigation and the irreparable mischief which it entailed."

Section 6120, Sand. & H. Dig., provides:

"An action may be brought and prosecuted to final decree, judgment or order, by any person or persons, whether in actual possession or not, claiming title to real estate, against any person or persons, whether in actual possession or not, who claim an adverse estate or interest therein, for the purpose of determining such estate or interest, and quieting the title to said real estate."

It has been repeatedly held by the Supreme Court of the United States that state statutes enlarging the power of courts of equity in the states will be enforced in the federal courts, unless they infringe upon section 723 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 583], inhibiting suits in equity in any case where a plain, complete, and adequate remedy may be had at law; and a statute of the state of Iowa very similar to this was upheld in that case. I think it, therefore, clear that, in view of the statute of Arkansas and the decision above quoted, a court of equity is a court of "Competent Jurisdiction," within the meaning of section 2326 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 1430], and it has been so treated generally by the inferior courts and the United States Circuit Court of Appeals. See Preston v. Hunter et al., 67 Fed. 996, 15 C. C. A. 148; Shoshone Mining Company v. Rutter et al., 87 Fed. 801, 31 C. C. A. 223; U. S. Mining Company v. Lawson (C. C.) 115 Fed. 1006. It is needless to inquire, therefore, whether, in the absence of such a statute as that cited, a court of equity would have jurisdiction in such a case as that under consideration, where neither party was in possession of the property. The question, however, was elaborately discussed in Shoshone Mining Company v. Rutter et al., 87 Fed. 801, 31 C. C. A. 223, by the Circuit Court of Appeals for the Ninth Circuit. It is not necessary for me, however, to decide that question here, and I abstain therefrom. But the plea in this case raises another question of jurisdiction. In this plea it is alleged that C. C. Clendenin and Fred B. Sanders still own their interest in the mine in controversy, and that the same is held by the plaintiff, R. W. Willitt, in trust for them, and that the said Clendenin and Sanders are citizens of Arkansas, and therefore the court has no jurisdiction. It was held in Larned v. Jenkins, 109 Fed. 100, 48 C. C. A. 252, that:

"The fact that an action is brought, pursuant to the requirements of Rev. St. § 2326 [U. S. Comp. St. 1901, p. 1430], to determine the right to the pos-

session of a mining claim, does not confer jurisdiction of such action on a federal court."

In other words, that a suit over a mining claim does not, in and of itself, establish that it is a case of federal cognizance. Mining Company v. Rutter, 177 U. S. 505, 20 Sup. Ct. 726, 44 L. Ed. 864; Blackburn v. Mining Company, 175 U. S. 571, 20 Sup. Ct. 222, 44 L. Ed. 276. This question, however, is of no importance in this case, because the testimony fails to show the truth of the plea. It follows, therefore, that jurisdiction in this class of cases must depend upon the citizenship of the parties. They must be citizens of different states. The case could only be dismissed on the ground mentioned when it is shown that the transfer by Clendenin and Sanders to Willitt, the plaintiff, is simulated and collusive. This is not shown. The rule in such cases is found stated and illustrated by a variety of cases found in volume 2 of the Federal Reporter Digest, at page 2991, par. 86. It may be added that when the sale is real, and not simulated, the motive with which the sale was made is not the subject of inquiry, and is quite immaterial.

It is insisted that the contest in the land office was not instituted by the plaintiff, but by him and his grantors, who are named in the complaint; and it appears from the record that the receiver's receipt was, in point of fact, issued to the plaintiff and the original grantors. The receiver's receipt was dated October 27, 1902; the suit was instituted on November 26, 1902; the conveyances to plaintiff are all dated between the two last-named dates; so that it clearly appears that the contest in the land office was begun by the original locators, and before the institution of the suit the title became vested in the plaintiff, and the suit was instituted by him. Section 2326, Rev. St. U. S. [U. S. Comp. St. 1901, p. 1430], provides:

"Where an adverse claim is filed during the period of publication, it shall be upon the oath of the person or persons making the same, and shall show the nature, boundaries, and extent of such adverse claim, and all proceedings, except the publication of notice and making and filing of the affidavit thereof, shall be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived. It shall be the duty of the adverse claimant, within thirty days after filing his claim, to commence proceedings in a court of competent jurisdiction, to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment; and a failure so to do shall be a waiver of his adverse claim."

By the terms of the statute, it is seen that the suit must be instituted by the "adverse claimant." But I think that the construction is altogether too narrow, to hold that the construction of the statute shall be absolutely literal. The general rule of law is that all suits shall be brought by the party in interest, and, if the plaintiff became vested, between the institution of the adverse claim and the institution of the suit, of the rights of his co-locators, he is in fact the real party in interest; and, if he could not institute the suit, no suit could be instituted at all. At all events, he was one of the original locators, as well as one of those who instituted the adverse claim, and has the right to institute the suit in his own name for his own interest; but I think, having become vested of all the property before bringing the suit, he had the right to bring it in his own name.

This brings us to the merits. It is not disputed that the locators under whom the defendant holds by conveyances made their locations in due form on the 2d of January, 1900. It may be conceded that the $100 worth of work required by the statute to be done annually was not done, either by the defendant or his grantors, for the year 1900, although there is some testimony that it was done. It is beyond question, under the proof, that the assessment work for 1900 was begun in the fall or winter of that year. The plaintiff himself testifies that he was on the ground in the month of December, and work had begun on the claim; and he testifies also that about 4 o'clock of December 31, 1900, he was on the claim, and found tools (shown to have been the tools of the defendant) in the cut on the claim where defendant had been at work, and that they were there also on the following day, to wit, January 1, 1901, about 2 o'clock in the afternoon, and that, so far as he could tell, they had not been disturbed since the previous afternoon, when he had seen them in the cut, and that no work had been done in the meantime, that he could discover, on the premises. He also testifies that he could not find anywhere on the ground (and he was at some pains to ascertain) whether or not work had been resumed. He also stated that he had made his location and posted his notice about 2 o'clock a. m. of the night of the 31st of December, 1900, and that he could not state that defendant did no work on the place on the 31st of December, 1900, or that he did not resume work on January 1, 1901. There is some testimony, more or less remote and incidental, which tends to corroborate the testimony of plaintiff as to whether the work was resumed on the 1st of January, 1901. On the other hand, there is the positive testimony of the defendant and H. E. Baker that they worked on the land on December 31, 1900, and left the tools in the cut where they quit work, intending to resume work at the usual time next day, and did so, and worked on the claim all next day, and for several days thereafter; and H. E. Baker testifies that he did not see the plaintiff and others posting notices on the claim on January 1, 1901, and never saw any notices, but heard of one, and that he thought that Mr. Sanders (one of the witnesses for plaintiff) knew that he and E. C. Baker were there at work on that day. He also testified that he worked on the 31st of December, 1900, in what was described by T. L. Baker as cut No. 3, on the south side of the claim, and that he does not remember precisely how long they worked, but they usually worked nine hours a day; that their tools were left in cut No. 3, and that on the 1st of January, a part of the day, they worked in cut No. 3, and went up farther, to what is known as cut No. 4; that part of the time he worked in cut No. 3 on January 1, 1901, he was alone, and part of the time E. C. Baker was with him, and when E. C. Baker was not with him he was prospecting upon the claim. There is some testimony, rather remote, tending to corroborate the testimony of these two witnesses. It is not denied by any witness that E. C. Baker and T. L. Baker worked on the claim in controversy on the 31st of December, 1900, and left their tools in the cut where they quit work, nor is it denied that they resumed work on the following day; but, as stated, there is some evidence tending to show that their testimony is not true. There is an apparent, but not an actual, irreconcilable conflict on this

point. It is easy to see how a man or men might go on a 160-acre tract of rough, broken, mountainous land, walk over it in a very general way, and not see a man or men at work on the mountain, or prospecting in some gulch or on some ledge, and then truthfully swear what the plaintiff has sworn in this case; and yet a man or men might be there all the time, and at work, and not be seen. Much depends upon the circumstances, the character and topography of the land, and character of work that was being done, or good faith of the parties in going upon the land to examine and look for persons at work. The court, in order to sustain plaintiff's contention on this point, would be compelled to find that the positive testimony of the defendant and T. L. Baker was deliberately false. It may be conceded that their testimony is not satisfactory, and, to a considerable degree, indefinite; indicating a want of candor. I cannot say, on the evidence, that they did not work on the claim on December 31, 1900; that they did not leave their tools that evening in the cut, intending to return the next day and resume work at the usual time, nor can I find that they did not so do, in the absence of evidence to that effect, either positive, or, if circumstantial, then so positive as to exclude the probability of its truth. On this point the burden was on the plaintiff to show that the work for the year 1900 was not done, and that it was not resumed on the 1st of January, 1901. In Buffalo, Zinc & Copper Company v. Crump, 70 Ark. 540, 69 S. W. 572, 91 Am. St. Rep. 87, the Supreme Court of this state held that a forfeiture of a mining claim by the failure of the former owner to perform the annual labor required by law cannot be established except by clear and convincing evidence, the burden of proving which rests upon him who sets it up—in this case, upon the appellee. Hammer v. Garfield Mining Company, 130 U. S. 291–301, 5 Sup. Ct. 548, 32 L. Ed. 964. It is settled law that equity favors neither forfeitures nor penalties. It would seem to the court that the plaintiff knew at the time he located his claim that the defendants had been doing work upon the claim in the latter part of December, 1900 ; that their tools were upon the ground, and their camp close to or upon the edge of the claim itself; that it would have been easy for him to have established by other evidence whether or not on the 1st of January, 1901, work was resumed upon the mine. This was the crucial question in his case, for, if work had not been abandoned upon the mine, then he himself was a trespasser. He is not corroborated upon this point by any positive proof, although upon that very day he and others, according to his own testimony, were upon the place and located his claim. In Fee v. Durham, 121 Fed. 469, 57 C. C. A. 584, the Circuit Court of Appeals of the Eighth Circuit, by Judge Caldwell, said:

"The defendant's grantors were in the actual possession of the claim, actively engaged in doing the annual assessment work thereon, when the plaintiffs entered upon the claim and made their location. The entry and location, under these circumstances, was a trespass, and no rights were acquired thereby. The Lebanon Mining Compa of New York v. The Consolidated Republican Mining Company, 6 Colo. 371.; Weese v. Barker, 7 Colo. 178, 2 Pac. 919; Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735. Inchoate rights to the public lands cannot in any case be acquired by trespass or by violence. An entry upon the prior possession of another is a trespass, and tends to provoke violence, homicides, and other crimes, and one making such

an entry gains nothing by it. Atherton v. Fowler, 96 U. S. 513, 24 L. Ed. 732. The original locators must be held to have been in the actual possession of the claim at the time the plaintiffs made their location. The suspension of work Saturday night, intending to resume it Monday morning, and leaving their tools on the ground for that purpose, was not in any sense an abandonment of their possession for the time between Saturday night and Monday morning. In contemplation of law, their possession was as complete and actual during that time as if they had remained at work during the night and on the Lord's Day. They were not required to work during the night or on the Lord's Day in order to maintain their possession and make their assessment work continuous. Their possession was attested and protected by their work and the presence of their tools. They could not lawfully work on the Lord's Day, if they had desired to do so, for the law of the state forbids labor on that day, under a penalty. Sand. & H. Dig. § 1887. Resting from their work from Saturday night until Monday morning was no more an abandonment of their work or possession than the cessation of work to eat their midday meal would be. Under the act of Congress, the failure to do the required assessment work within the year does not absolutely and irrevocably render the claim subject to relocation. It has this qualification: 'Provided that the original locators * * * have not resumed work after failure and before such location.' Rev. St. § 2324, as amended in 1880 (Act Jan. 22, 1880, c. 9, § 2, 21 Stat. 61 [U. S. Comp. St. 1901, p. 1426]). Referring to this statute, the Supreme Court of the United States, in Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735, said: 'Such being the law, it seems to us clear that if work is renewed on a claim after it has once been open to relocation, but before a relocation is actually made, the rights of the original owners stand as they would if there had been no failure to comply with this condition of the act. * * * Mining claims are not open to relocation until the rights of the former locator have come to an end. A relocator seeks to avail himself of mineral in the public lands which another had discovered. This he cannot do until the discoverer has, in law, abandoned his claim, and left the property open for another to take up.' The original locators in this case had not abandoned their claim, but were actually and continuously at work from the 26th of December until an early day in January, when they had done $500 worth of work. There was no suspension of the work during this time, and there was no period of time during which the plaintiffs could enter and make a valid location. The continuity of the work and possession was not broken by the cessation of labor at night and on the Lord's Day. It must be conceded that if the original locators had resumed work after the clock struck 12 on Saturday night, December 31st, that the plaintiffs' location would have been invalid. We think, upon the facts in this case, for all legal purposes, the original locators must be held to have been prosecuting the work for the whole of that night, and that plaintiffs could not rightfully enter upon the claim and make a valid location between midnight and the usual hour of resuming work on Monday morning. Pharis v. Muldoon (Cal.) 17 Pac. 70; Belcher Consolidated Mining Company v. Deferrari, 62 Cal. 160.''

When the plaintiff located his claim at 2 a. m. on the 31st of December, 1901, he was, in law, a trespasser. The claim was not abandoned. The defendants were as much at work upon the claim at that time as if they had been actually in the cut, using the tools, at the time he made his location. In Gwillam v. Donnellan, 115 U. S. 49, 5 Sup. Ct. 1110, 29 L. Ed. 348, the court said:

"If, when one enters on land to make a location, there is another location in full force, which entitles its owner to the exclusive possession of the land, the first location operates as a bar to the second. Belk v. Meagher, 104 U. S. 279, 284, 26 L. Ed. 735."

But it is held in numerous cases that in a suit brought under Rev. St. § 2326 [U. S. Comp. St. 1901, p. 1430], to determine the right of possession of an adverse mining claim, the title of each party is brought

in question, and each party must make proof of his title thereto before he can ask a judgment in his favor. In Bay State Silver Mining Company v. Brown (C. C.) 21 Fed. 167, Judge Sabin held:

"Where neither party establishes title to the ground in controversy, judgment cannot be for either party, and the suit must be dismissed." Citing Jackson v. Roby, 109 U. S. 440, 3 Sup. Ct. 301, 27 L. Ed. 990.

He also states:

"In suits of this nature no presumptions of fact as to title arise. Title, right of possession, or forfeiture are facts to be established by the evidence."

In Whalen Consol. Copper Mining Company v. Whalen et al. (C. C.) 127 Fed. 611, it was held that the evidence of the amount of money paid for work done, though not conclusive, was admissible, as bearing on the claimant's good faith. In that case the court said:

"The laborers received but $3.50 per day, which was a reasonable sum. They were paid for one day and a half in going from Eureka to the mines, which, under the facts of this case, was proper. The foreman received $5.00 per day, which was not unreasonable. The expenses paid for tools, freight, and hauling to the mines must also be allowed."

The question rises, therefore, as to whether or not the defendant has shown that he was entitled at the commencement of this suit to the possession of this property. Did he do the required assessment work for the year 1900? Upon this point there is a direct conflict in the evidence. But as said by District Judge Hawley in McCulloch v. Murphy (C. C.) 125 Fed. 149, 150:

"The testimony concerning the amount of labor performed furnished a wide field of controversy, and an opportunity for a broad difference of opinion as to the value of the work. There is always a conflict as to the actual or reasonable value of the labor. It has been said—and a wide experience in such cases has convinced the court of its truth—that every relocator is interested in depreciating the value of the work performed by the original locator, and the latter, in saving his claim from forfeiture, is interested in extolling his work. The case in hand certainly forms no exception to this general rule. In cases of a conflict upon this point, it is always proper to consider whether there has been a bona fide attempt to comply with the law."

This language is quite as applicable to the case at bar as it was to the case in which it was used. The value of the work done for the year 1900 is variously estimated by interested witnesses at from $25 to $150. It is profitless to analyze the evidence. It is well, however, to notice the rules which have been observed by other courts in determining questions of this sort. In Book et al. v. Justice Mining Company (C. C.) 58 Fed. 107, District Judge Hawley used this language:

"Labor and improvements, within the meaning of the statute, are deemed to be done upon the location when the labor is performed or improvements made for the express purpose of working, prospecting, or developing the ground embraced in the location. Work done outside of the limits of a mining claim, for the purpose of prospecting or developing it, is as available for holding the claim as if done within the boundaries of the location of the claim."

I refer to these matters in order that it may be seen that the courts have been liberal in passing upon the question of whether or not the assessment work for any given year has been done. In view of the de-

cisions upon this subject as announced by courts of large experience in mining cases, I should, in this case, if necessary, reach the conclusion that the defendant did the necessary amount of work for the year 1900 during the months of December, 1900, and early in January, 1901. But defendant's case must fail for another reason. The bill in this case was not filed until the 26th of November, 1902, and there is an entire absence of any proof whatever that after the month of January, 1901, the defendant ever did any assessment work upon the claim in controversy. The express condition of the statute requires that "not less than $100.00 worth of labor shall be performed or improvements made during each year." There is no proof that any labor was ever performed for the year 1901. Whether this is attributable to a misconception of the law by counsel in the preparation of his case, or whether it is due to the fact that no work was ever done, the court is not advised, and could only speculate. A reading of the testimony would indicate, though not definitely, that no work has been done since January, 1901, on this claim by the defendant. This being true, he has wholly failed to establish that he has any right to the possession of the claim. He has specifically alleged in his answer "that he and those under whom he holds have performed the assessment work on said land required by law, and have done and performed an amount of work thereon sufficient, in law, to entitle him to a United States patent upon paying the purchase price to the government, and he has made application number 559 so to do, and he is entitled to the possession of the land, and is now in the actual possession of the same," but there is no proof whatever to establish it. The statute requires that "the claimant, at the time of filing this application, or at any time thereafter, within sixty days of publication, shall file with the Surveyor General of the United States a certificate showing that $500.00 worth of labor has been expended or improvements made upon the claim by himself or grantors." . It is true that after the adverse claim was filed it was not necessary for him to file that certificate until the case had been determined in this court, but it is not true that he can be permitted now, after the determination of the case at bar, to perform the assessment work for the years 1901, or any subsequent year, or to perform $500 worth of work, which is essential to enable him to procure a patent. Benson Mining & Smelting Company v. Alta Mining & Smelting Company, 145 U. S. 428, 12 Sup. Ct. 877, 36 L. Ed. 762; McCulloch v. Murphy et al. (C. C.) 125 Fed. 147; Book et al. v. Justice Mining Company (C. C.) 58 Fed. 106; Jackson v. Roby, 109 U. S. 440, 3 Sup. Ct. 301, 27 L. Ed. 990; Bay State Silver Mining Company v. Brown (C. C.) 21 Fed. 167; Whalen Consolidated Copper Mining Company v. Whalen et al. (C. C.) 127 Fed. 611.

The finding of the court will be that neither party is entitled to the possession of the property in controversy, and the bill will be dismissed at the costs of the plaintiff.